UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Yvonne Louise Black,

           Plaintiff,

v.

LIVINGSTON COUNTY, et al.,

           Defendants.

_____/

Case No. 2:25-cv-10753
Hon. Stephen J. Murphy, III
United States District Judge

David R. Grand
Magistrate Judge

Yvonne Louise Black
In *Propria Persona*
3985 Cedar Lake Road
Marion Township, MI  48843
(517) 294-1837
ylblack@yahoo.com

Kali M. L. Henderson
Attorney for Defendants
210 E. 3rd Street, Suite 212
Royal Oak, MI  48067
(248) 733-3580
khenderson@sewardhenderson.com

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS …........................................................................ i

INDEX OF AUTHORITIES …..................................................................... ii

QUESTIONS PRESENTED …...................................................................... iii

STATEMENT OF ISSUES PRESENTED …...................................................... iv

INTRODUCTION …................................................................................ 1

I. THE SIXTH CIRCUIT'S REMAND DEFINES THE SCOPE OF THE REMAINING LITIGATION …........................................................................ 3

II. ROOKER-FELDMAN DOES NOT DEPRIVE THIS COURT OF SUBJECT-MATTER JURISDICTION........................................................... 4

III. HECK DOES NOT BAR PLAINTIFF'S CLAIMS …...................................... 7

IV. PLAINTIFF PLAUSIBLY STATES FIRST AMENDMENT CLAIMS …............. 10

V. PLAINTIFF PLAUSIBLY STATES A FOURTH AMENDMENT CLAIM …......... 15

VI. PLAINTIFF HAS PLAUSIBLY PLED MONELL LIABILITY…...................… 19

    A. Plaintiff Identifies the Official Policy …............................................... 19

    B. Plaintiff Connects the Policy to Livingston County …............................. 20

    C. Plaintiff Plausibly Alleges the Policy Was the Moving Force Behind the Constitutional Violations …............................................................ 20

    D. Defendants Mischaracterize Plaintiff's Constitutional Challenge …............. 21

    E. Plaintiff's Monell Claim Does Not Depend Solely Upon a Failure-to-Train Theory …............................................................................... 22

    F. Plaintiff's Alternative Failure-to-Train Allegations Further Support Municipal Liability …...................................................................... 22

VII. DEFENDANTS MISCHARACTERIZE THE POLICY …............................. 23

VIII. PLAINTIFF HAS STANDING TO SEEK DECLARATORY AND INJUNCTIVE RELIEF …........................................................................ 27

    A. Plaintiff Plausibly Alleges a Real and Continuing Threat of Future Injury …. 27

    B. Olivier Confirms That Heck Does Not Bar Plaintiff's Wholly Prospective Claim …..................................................................................... 29

    C. Defendants' Assertion That the Policy Is Constitutional Presents the Merits Question …........................................................................ 30

    D. The Requested Relief Would Not Disturb the State-Court Judgment …........ 30

IX. DEFENDANTS IMPROPERLY ASK THE COURT TO RESOLVE FACTUAL DISPUTES …........................................................................ 31

CONCLUSION …................................................................................ 34

**INDEX OF AUTHORITIES**

*City of Houston v. Hill,*
        482 U.S. 451 (1987) …............................................................................... 14

*Heck v. Humphrey*
        512 U.S. 477 (1994) …................................................................ 8, 10, 27, 29, 31, 35

*Monell v. Department of Social Services.,*
        436 U.S. 658 …................................................................. 3, 9, 19, 22, 23

*Olivier v. City of Brandon,*
        607 U.S. ____, …............................................................... 29, 31, 35

*Richmond Newspapers, Inc. v. Virginia,*
        448 U.S. 555 (1980) …................................................................................. 14

Rooker-Feldman Doctrine …............................................................................... 7

**CONSTITUTIONAL PROVISIONS**

First Amendment …........................................................ 2, 3, 8, 9, 10, 13, 14, 33, 34, 35

Fourth Amendment …........................................................ 3, 8, 15, 16, 18, 23, 33, 34, 35

Fourteenth Amendment …................................................................. 3, 33, 35

**COURT RULES**

FRCP 12(b)(1) …................................................................................. 34

FRCP 12(b)(6) …........................................................ 2, 4, 15, 17, 18, 27, 30, 31, 33, 34

FRCP 42 U.S.C. § 1983 …................................................................. 1, 5, 7, 8, 12, 36

## QUESTIONS PRESENTED

QUESTION NO: 1      Whether Plaintiff's constitutional claims are barred by the Rooker-Feldman doctrine and Heck?

QUESTION NO: 2      Whether Plaintiff's Monell claims should be dismissed as unsupported?

QUESTION NO: 3      Whether Plaintiff's claim for injunctive relief should be dismissed as unsupported?

**STATEMENT OF ISSUES PRESENTED**

- Whether Plaintiff's Fourth Amended Complaint alleges independent constitutional claims that are not barred by the Rooker-Feldman doctrine.

- Whether Defendants have demonstrated that *Heck v. Humphrey* requires dismissal of Plaintiff's claims at the pleading stage.

- Whether the Fourth Amended Complaint plausibly alleges that Livingston County's Comprehensive Security Policy was the moving force behind the alleged constitutional violations.

- Whether Plaintiff has plausibly alleged standing to seek declaratory and prospective injunctive relief.

- Whether Defendants' Motion improperly asks the Court to resolve disputed factual issues that must instead be accepted as alleged under Rule 12(b)(6).

## INTRODUCTION

Defendants' Motion to Dismiss fundamentally mischaracterizes both Plaintiff's Fourth Amended Complaint and the decision of the United States Court of Appeals for the Sixth Circuit remanding this case. Plaintiff does not ask this Court to overturn her state criminal conviction, review the decisions of the Michigan courts, or function as a court of appellate review over any state-court judgment.

Instead, Plaintiff seeks relief under 42 U.S.C. § 1983 for constitutional violations arising from the enforcement of Livingston County's Comprehensive Security Policy and the conduct of Defendants acting under color of state law.

The Fourth Amended Complaint challenges the constitutionality of Livingston County's Comprehensive Security Policy, Section VIII.c.i., both facially and as applied.

Plaintiff alleges that the Policy delegates to security personnel broad discretion to determine what constitutes "disruptive behavior," authorizes the seizure and removal of members of the public based upon vague and undefined standards, and was enforced against Plaintiff without a judicial directive and without probable cause grounded in law.

Plaintiff further alleges that the Policy itself, together with Livingston County's customs and practices regarding its enforcement, constituted the moving force behind the constitutional violations alleged in the Complaint.

Contrary to Defendants' characterization, Plaintiff does not seek damages for her conviction or request that this Court invalidate, reverse, expunge, or otherwise disturb any state-court judgment. Rather, Plaintiff seeks damages for violations of her clearly

1

established constitutional rights arising from Defendants' conduct, together with declaratory and injunctive relief prohibiting continued enforcement of an unconstitutional policy that Plaintiff alleges continues to chill her exercise of First Amendment rights.

The Sixth Circuit has already determined that Plaintiff's claims against Livingston County and the sheriff personnel warranted further proceedings because they were not properly dismissed as duplicative of Plaintiff's prior federal action. On remand, Defendants largely ignore the allegations actually contained in the Fourth Amended Complaint and instead attempt to recharacterize this action as a collateral attack upon Plaintiff's criminal conviction. It is not.

Instead of accepting Plaintiff's well-pleaded factual allegations as true, as required under Rule 12(b)(6), Defendants repeatedly ask the Court to resolve disputed facts in their favor, including whether Plaintiff disrupted court proceedings, whether she was merely "escorted" rather than seized, whether probable cause existed, and whether Livingston County's Policy is constitutional. Those are not issues appropriately resolved on a motion to dismiss.

Defendants repeatedly recast this action as though Plaintiff merely objects to being told to remain quiet during court proceedings. The Fourth Amended Complaint alleges no such claim. Plaintiff challenges the constitutionality of Livingston County's Comprehensive Security Policy, the asserted legal authority under which Defendant VanWulfen acted, the resulting seizure of Plaintiff, and the Policy's continuing enforcement against members of the public.

2

Because the Fourth Amended Complaint plausibly alleges violations of the First, Fourth, and Fourteenth Amendments, adequately pleads municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 and seeks prospective relief from the continued enforcement of an allegedly unconstitutional policy, Defendants' Motion to Dismiss should be denied.

## I. THE SIXTH CIRCUIT'S REMAND DEFINES THE SCOPE OF THE REMAINING LITIGATION

Defendants' Motion to Dismiss gives insufficient weight to the procedural posture of this case. This action comes before the Court on remand from the United States Court of Appeals for the Sixth Circuit after the Court of Appeals vacated the dismissal of Plaintiff's claims against Livingston County and the sheriff personnel. The Sixth Circuit concluded that those claims were not properly dismissed as duplicative of Plaintiff's prior federal litigation and remanded the case for further proceedings consistent with its opinion.

The Fourth Amended Complaint was filed following remand and was specifically revised to address the concerns identified during the prior proceedings. Among other things, Plaintiff clarified that she does not seek to invalidate her criminal conviction, expressly alleges standing for prospective declaratory and injunctive relief, and pleads detailed allegations concerning Livingston County's Comprehensive Security Policy, the County's customs and practices regarding courtroom security, and the causal relationship between those policies and the constitutional injuries alleged.

Rather than addressing the Complaint as amended following remand, Defendants

3

largely revisit legal theories that assume this action is simply another challenge to Plaintiff's criminal conviction. That characterization overlooks the substance of the Fourth Amended Complaint. Plaintiff challenges the constitutionality of an ongoing County policy and seeks relief for constitutional injuries allegedly caused by that policy and its enforcement. Those claims are distinct from any request to overturn a criminal judgment and must be evaluated according to the allegations presently before this Court.

The Sixth Circuit did not determine the merits of Plaintiff's constitutional claims, nor did it hold that Plaintiff ultimately will prevail. Likewise, it did not foreclose Defendants from raising appropriate defenses. It did, however, recognize that Plaintiff's claims against Livingston County and the sheriff personnel required further proceedings rather than dismissal as duplicative. The Court should therefore evaluate the sufficiency of the Fourth Amended Complaint under the standards governing Rule 12(b)(6), accepting Plaintiff's well-pleaded factual allegations as true and drawing all reasonable inferences in Plaintiff's favor.

Defendants' Motion instead repeatedly invites the Court to resolve factual disputes, weigh competing versions of events, and adopt Defendants' characterization of the evidence. That is not the function of a motion to dismiss. The only question presently before the Court is whether Plaintiff has plausibly alleged claims upon which relief may be granted. The Fourth Amended Complaint satisfies this standard.

### II. ROOKER-FELDMAN DOES NOT DEPRIVE THIS COURT OF SUBJECT-MATTER JURISDICTION

Defendants' principal jurisdictional argument rests upon the erroneous premise

4

that Plaintiff asks this Court to review and reject the judgments of the Michigan courts. Plaintiff does not.

The Fourth Amended Complaint expressly disclaims any request that this Court invalidate, reverse, expunge, or otherwise disturb Plaintiff's criminal conviction. Plaintiff likewise does not seek appellate review of any decision entered by the 53rd District Court, the Livingston County Circuit Court, the Michigan Court of Appeals, or the Michigan Supreme Court. Rather, Plaintiff seeks relief under 42 U.S.C. § 1983 for constitutional injuries allegedly caused by Defendants' conduct and by Livingston County's continuing enforcement of the Comprehensive Security Policy.

Defendants argue that Plaintiff's claims are barred because success on her First and Fourth Amendment claims would necessarily require this Court to conclude that the Michigan courts were wrong regarding probable cause. That argument mischaracterizes Plaintiff's Complaint.

Plaintiff challenges the constitutionality of Defendants' conduct at the time of the seizure, together with the constitutionality of Livingston County's Policy that allegedly authorized and encouraged that conduct. Plaintiff further seeks prospective declaratory and injunctive relief prohibiting continued enforcement of that Policy. These claims concern the conduct of state actors and the constitutionality of an ongoing municipal policy—not appellate review of a state-court judgment.

The Fourth Amended Complaint alleges that Defendant VanWulfen seized and removed Plaintiff pursuant to Livingston County's Comprehensive Security Policy

despite the absence of any judicial directive ordering Plaintiff to leave the courtroom and despite Plaintiff's allegation that she had not engaged in conduct that interrupted the proceedings.

Plaintiff alleges that the constitutional violations occurred at the moment of the seizure and continued thereafter through Defendants' subsequent actions.

These allegations arise from Defendants' conduct, not from any later judicial determination.

Defendants repeatedly assert that the Michigan courts determined Plaintiff's arrest was lawful. Even assuming those proceedings resulted in findings adverse to Plaintiff, that does not transform every subsequent constitutional challenge into an appeal of the state-court judgment. Plaintiff does not request that this Court reverse those decisions or declare the conviction invalid. Instead, Plaintiff alleges that Livingston County adopted and continues to enforce an unconstitutional policy that remains in effect today and continues to chill Plaintiff's exercise of her constitutionally protected rights.

Nor does Plaintiff ask this Court to review the correctness of evidentiary rulings, factual findings, or legal conclusions reached in the underlying criminal proceedings. The issue before this Court is whether Plaintiff has stated independent federal constitutional claims arising from Defendants' conduct and Livingston County's policies. Plaintiff does not request that this Court exercise appellate review over any state-court judgment.

Defendants' motion repeatedly reframes Plaintiff's claims as though the Complaint sought review of the state-court proceedings themselves. It does not. The Complaint

6

challenges an ongoing County policy and seeks prospective relief against its continued enforcement. The request for declaratory and injunctive relief necessarily concerns future enforcement of the Policy, not retrospective review of Plaintiff's criminal judgment.

Moreover, Defendants' argument improperly assumes disputed facts in their favor. They assert that Plaintiff was lawfully "escorted" from the courtroom and arrested only after assaulting a police officer. The Fourth Amended Complaint alleges otherwise. Plaintiff alleges that she was physically seized without a judicial directive, that her actions or her brief verbal remark did not interrupt the proceedings, that Defendant VanWulfen's own conduct caused the interruption of the trial, and that the subsequent criminal process flowed from that initial unconstitutional seizure. At the pleading stage, those factual allegations must be accepted as true and construed in Plaintiff's favor.

Defendants overstate the scope of the state-court proceedings. Plaintiff's Complaint does not rely upon this Court reviewing those proceedings, and Plaintiff disputes Defendants' characterization that the underlying factual issues were fully litigated.

Accordingly, this action is not a prohibited appeal from a state-court judgment but an independent action brought under 42 U.S.C. § 1983 challenging the constitutionality of Defendants' conduct and Livingston County's ongoing policy. Because Plaintiff does not seek review or rejection of any state-court judgment, the Rooker-Feldman doctrine does not deprive this Court of subject-matter jurisdiction.

### III. HECK DOES NOT BAR PLAINTIFF'S CLAIMS

Defendants next argue that Plaintiff's claims are barred by *Heck v. Humphrey* because success on her First and Fourth Amendment claims would necessarily imply the invalidity of her criminal conviction. That argument mischaracterizes both the allegations of the Fourth Amended Complaint and the relief Plaintiff seeks.

The Fourth Amended Complaint expressly disclaims any request that this Court invalidate, reverse, expunge, or otherwise call into question Plaintiff's criminal conviction. Plaintiff does not seek damages arising from the conviction itself, nor does she seek release from custody, reversal of her plea, or any other relief traditionally associated with habeas corpus. Instead, Plaintiff seeks relief under 42 U.S.C. § 1983 for constitutional violations of clearly established rights allegedly committed by Defendants acting under color of state law and for the continuing enforcement of Livingston County's Comprehensive Security Policy.

Defendants assume that any finding in Plaintiff's favor would necessarily require this Court to declare Plaintiff's conviction invalid. The Complaint alleges no such theory. Rather, Plaintiff alleges that Defendants violated her clearly established constitutionally protected rights through the enforcement of an unconstitutional municipal policy, through the seizure of Plaintiff without lawful authority, and through the suppression of protected speech. Plaintiff further seeks declaratory and prospective injunctive relief prohibiting continued enforcement of the challenged Policy.

Plaintiff's claims concerning Livingston County's Comprehensive Security Policy are prospective as well as retrospective. The Complaint alleges  that the Policy remains in

effect, that Plaintiff intends to return to Livingston County courthouses to observe judicial proceedings, and that continued enforcement of the Policy chills Plaintiff's exercise of her clearly established First Amendment rights. Those allegations concern an ongoing municipal policy, not merely past criminal proceedings.

Likewise, Plaintiff's Monell claim challenges Livingston County's adoption, maintenance, and enforcement of the Comprehensive Security Policy as the moving force behind the alleged constitutional violations. Municipal liability under *Monell* focuses upon the constitutionality of the municipality's policies and customs. Resolution of those claims does not require this Court to invalidate Plaintiff's criminal judgment. Rather, Plaintiff alleges that the County's Policy itself violates the Constitution and continues to threaten future constitutional injury.

Defendants' motion repeatedly assumes as established facts that Plaintiff disrupted court proceedings, that Plaintiff was merely escorted from the courtroom and that Plaintiff assaulted a police officer, before being arrested. These factual assertions are disputed by the Fourth Amended Complaint. Plaintiff alleges that Defendant VanWulfen physically seized Plaintiff without any judicial directive ordering her removal, that Plaintiff's retrieval of the purse, that Plaintiff's brief verbal remark did not interrupt the proceedings, and that the interruption to the proceedings resulted from Defendant VanWulfen's own actions in physically removing Plaintiff from the courtroom. At this stage of the proceedings, those well-pleaded allegations must be accepted as true.

Furthermore, Plaintiff alleges that Defendant VanWulfen acted pursuant to

9

Livingston County's Comprehensive Security Policy rather than pursuant to any judicial order directing Plaintiff's removal. The Complaint alleges that the Policy itself purported to supply the authority for Plaintiff's removal based upon an undefined determination of 'disruptive behavior.' Thus, Plaintiff challenges the constitutionality of the asserted source of authority for the seizure itself, independent of any later criminal proceedings.

Finally, Defendants' argument would effectively immunize any unconstitutional municipal policy whenever criminal proceedings later resulted in a conviction. That is not the rule announced in *Heck*. Plaintiff's Complaint does not seek to invalidate her conviction. Rather, it alleges independent constitutional violations arising from Defendants' conduct and Livingston County's policies and seeks both damages for those alleged violations and prospective relief against continued enforcement of the challenged Policy.

Accordingly, Defendants have not demonstrated that Plaintiff's claims, as pleaded in the Fourth Amended Complaint, are barred by *Heck v. Humphrey*, and dismissal on that basis should be denied.

## IV. PLAINTIFF PLAUSIBLY STATES FIRST AMENDMENT CLAIMS

Defendants argue that Plaintiff fails to state a First Amendment claim because Livingston County's Comprehensive Security Policy merely prohibits "disruptive behavior," which they contend is a reasonable restriction in a courtroom. Defendants' argument oversimplifies both the allegations of the Fourth Amended Complaint and the constitutional issues presented.

10

Plaintiff does not allege merely that the word "disruptive" lacks a dictionary definition. Rather, Plaintiff alleges that Livingston County adopted and enforced an administrative policy that delegates to court security personnel broad and undefined discretion to determine what speech or conduct constitutes "disruptive behavior," without objective standards, meaningful limitations, or statutory authority. The constitutional defect alleged in the Complaint is not the ordinary meaning of the word "disruptive," but the Policy's authorization of discretionary suppression of protected expression based upon subjective determinations made by security personnel rather than by the presiding judicial officer.

The Fourth Amended Complaint alleges that Defendant VanWulfen ordered Plaintiff to leave the courtroom immediately after Plaintiff made a brief verbal remark directed toward Defendant VanWulfen. Plaintiff alleges that she was not using a cellular telephone, was not the individual previously directed to leave the courtroom because of cellular telephone use, and was not engaged in conduct that interrupted testimony, halted the proceedings, or otherwise interfered with the orderly administration of the trial.

To the contrary, Plaintiff alleges that the interruption to the proceedings occurred only after Defendant VanWulfen reacted to Plaintiff's speech by immediately standing, ordering Plaintiff to leave, physically confronting Plaintiff, and ultimately forcibly removing her from the courtroom. During the preliminary examination in the underlying criminal case, Plaintiff likewise maintained that approximately thirty seconds elapsed before the proceedings resumed and that any interruption of the trial resulted from Defendant VanWulfen's actions rather than Plaintiff's conduct. Plaintiff's allegations

11

therefore present a factual dispute concerning the source of any disruption, one that cannot be resolved on a Rule 12(b)(6) motion.

Defendants attempt to justify the Policy by relying upon dictionary definitions of the words "disruptive" and "disrupt." Those definitions, however, do not answer Plaintiff's constitutional challenge. Plaintiff alleges that the Policy permits security personnel to determine, without objective standards and without judicial authorization, whether protected speech has become sufficiently "disruptive" to justify seizure and removal. The constitutional question presented is whether the Policy vests security personnel with excessive discretion to suppress protected expression, not whether the word "disruptive" has an ordinary meaning in common usage.

Plaintiff further alleges that nothing on the Court's publicly identified "Court Policies" page alerted members of the public that courtroom spectators could be removed based upon the undefined standard of "disruptive behavior" contained in the Comprehensive Security Policy. Instead, the Policy was located among Local Administrative Orders addressing internal court administration, reinforcing Plaintiff's allegation that an ordinary individual would not reasonably understand that the Policy purported to regulate spectator conduct or authorize seizure.

Plaintiff further alleges that an ordinary member of the public would not reasonably discover the challenged Policy by consulting the Court's publicly identified courtroom policies or Michigan Court Rules, further supporting Plaintiff's allegation that the Policy failed to provide fair notice of the standards later invoked against her.

Plaintiff further alleges that Defendant VanWulfen's enforcement of the Policy was directed at Plaintiff's speech rather than at conduct that actually disrupted the proceedings. Plaintiff had assisted another spectator in retrieving a purse after that spectator had already been instructed to leave the courtroom. Plaintiff alleges that this conduct did not interrupt the proceedings. Plaintiff further alleges that her brief verbal comment to Defendant VanWulfen likewise did not interrupt testimony or otherwise interfere with the trial. Accepting those allegations as true, Plaintiff has plausibly alleged that the challenged Policy was enforced based upon Defendant VanWulfen's subjective assessment of Plaintiff's speech rather than upon any actual disruption of the proceedings.

The Fourth Amended Complaint therefore alleges both facial and as-applied First Amendment violations. Plaintiff alleges that the Policy is facially overbroad because it authorizes suppression of protected speech through vague and undefined standards, and that it was applied against Plaintiff to suppress speech that did not materially interfere with the administration of justice. These allegations are sufficient at the pleading stage.

Defendants also characterize Plaintiff as merely having been required to remain quiet during court proceedings. That characterization does not reflect the allegations contained in the Complaint. Plaintiff does not allege that she was removed for violating a lawful courtroom order issued by the presiding judge. Rather, Plaintiff alleges that she was removed pursuant to Defendant VanWulfen's discretionary enforcement of Livingston County's Comprehensive Security Policy after making a brief verbal remark that, according to the Complaint, did not interrupt the proceedings.

Plaintiff was not removed for violating the Court's cellphone instruction. Prior to jury selection commenced, the presiding judge instructed I want no visible cellphones in my courtroom this morning. She later explained the procedure to be followed if a juror needed to leave the courtroom because of a cellular telephone. The judge instructed that a juror requiring cellphone use should raise a hand and would be escorted from the courtroom. Plaintiff does not allege that she violated those instructions. Rather, Plaintiff alleges that she was not using a cellular telephone and was not the spectator previously instructed to leave because of cellphone use. Instead, Plaintiff alleges that Defendant VanWulfen invoked the Comprehensive Security Policy after Plaintiff made a brief verbal remark, demonstrating that Plaintiff's removal was based upon Defendant VanWulfen's discretionary determination regarding Plaintiff's speech rather than enforcement of the judge's cellphone instructions.

The Supreme Court has long recognized that the First Amendment protects Plaintiff's right to attend court proceedings, See *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). And, for Plaintiff's verbal criticism and challenge directed toward government officials Plaintiff relies upon *City of Houston v. Hill*, 482 U.S. 451 (1987), because the Fourth Amended Complaint alleges that Defendant VanWulfen responded to Plaintiff's speech—not to an actual disruption of the proceedings—by invoking the Comprehensive Security Policy to seize and remove Plaintiff. Whether Plaintiff can ultimately prove those allegations is a question for summary judgment or trial. At the pleading stage, however, the Complaint plausibly alleges that Livingston County's Policy was enforced to suppress protected speech in violation of the First Amendment.

14

Accordingly, Plaintiff has plausibly stated a First Amendment claim, and dismissal under Rule 12(b)(6) is unwarranted.

## V. PLAINTIFF PLAUSIBLY STATES A FOURTH AMENDMENT CLAIM

Defendants contend that Plaintiff fails to state a Fourth Amendment claim because Defendant VanWulfen merely "escorted" Plaintiff from the courtroom and Plaintiff was not arrested until after allegedly assaulting a police officer.

The Fourth Amended Complaint alleges a materially different sequence of events. At the pleading stage, those well-pleaded factual allegations—not Defendants' characterization—must be accepted   as true.

Plaintiff alleges that after another spectator had been instructed to leave because of cellphone use, Plaintiff briefly assisted that spectator by retrieving her personal belongings so that the spectator could leave the courthouse. Plaintiff alleges that this conduct did not interrupt testimony, halt the proceedings, or otherwise interfere with the orderly administration of the trial. According to the Complaint, Defendant VanWulfen nevertheless treated Plaintiff's assistance and subsequent brief verbal remark as "disruptive behavior" under the Comprehensive Security Policy and exercised his own discretion to order Plaintiff to leave. Plaintiff alleges that the ensuing interruption to the proceedings resulted not from Plaintiff's conduct but from Defendant VanWulfen's decision to physically seize and physically remove Plaintiff from the courtroom.

Plaintiff further alleges that no judicial officer directed Plaintiff to leave the courtroom, that no judge found Plaintiff to be disrupting the proceedings, and that

15

Defendant VanWulfen acted pursuant to Livingston County's Comprehensive Security Policy rather than pursuant to any judicial order governing courtroom proceedings.

Plaintiff does not allege that she was voluntarily escorted from the courtroom. Rather, Plaintiff alleges that Defendant VanWulfen physically seized her inside the courtroom, forcibly removed her, handcuffed her, detained her for approximately two hours, ultimately transferred custody to other deputies and failed to file a complaint based on a warrantless arrest as required by law. Accepting those allegations as true, the Complaint plainly alleges a seizure within the meaning of the Fourth Amendment.

Defendants repeatedly characterize Plaintiff's removal as an "escort." The transcript of the underlying trial demonstrates that the presiding judge used the term "escort" to describe the procedure to be followed if a juror needed to leave the courtroom because of a cellular telephone. Plaintiff alleges she was not using a cellular telephone and was not the spectator previously instructed to leave because of cellphone use.

Instead, Plaintiff alleges that Defendant VanWulfen physically restrained and removed her after her brief verbal remark. The Complaint therefore alleges a materially different event than the voluntary escort procedure described by the presiding judge.

Plaintiff further alleges that Defendant VanWulfen's actions—not Plaintiff's conduct—interrupted the proceedings. During the preliminary examination, Plaintiff likewise maintained that the brief interruption resulted from Defendant VanWulfen's immediate reaction and physical removal of Plaintiff rather than from Plaintiff's speech itself.  Whether  Plaintiff's conduct actually disrupted the proceedings presents a disputed

16

factual issue that cannot be resolved on a Rule 12(b)(6) motion.

More fundamentally, Plaintiff alleges a structural constitutional defect in the asserted authority for the seizure itself. The Complaint alleges that authority to control courtroom proceedings rests with the presiding judicial officer. Plaintiff further alleges that no judicial officer ordered Plaintiff to leave the courtroom and that Defendant VanWulfen instead relied upon Livingston County's Comprehensive Security Policy, Section VIII.c.i., which purported to authorize security personnel to remove individuals based upon undefined determinations of "disruptive behavior."

Thus, Plaintiff's Fourth Amendment claim does not merely challenge whether probable cause existed. Rather, Plaintiff challenges the legal authority asserted for the seizure itself. According to the Complaint, Defendant VanWulfen exercised discretionary authority under an administrative policy—not pursuant to any judicial directive and not pursuant to any clearly defined statutory authority or Michigan Supreme Court rule.

Plaintiff alleges that the Policy itself supplied the purported authority for the seizure and that the Policy is unconstitutional because it authorizes seizure and removal based upon vague, subjective, and non-statutory standards.

Defendants argue that Plaintiff's arrest became lawful because they contend Plaintiff later assaulted Defendant VanWulfen. The Fourth Amended Complaint alleges otherwise. Plaintiff alleges that the seizure had already commenced upon Defendant VanWulfen physically restraining Plaintiff inside the courtroom. The constitutional inquiry therefore begins with the authority asserted for that initial seizure. Plaintiff has

17

consistently maintained this position since the preliminary examination, where she argued that Defendant VanWulfen—not Plaintiff—interrupted the proceedings and that Defendant VanWulfen lacked lawful authority to remove Plaintiff from the courtroom.

Plaintiff alleges that the structural defect identified in this action existed at the inception of the encounter: Defendant VanWulfen exercised authority under the Comprehensive Security Policy rather than pursuant to any judicial order. Whether Defendants' subsequent version of events is ultimately accepted cannot be resolved on a Rule 12(b)(6) motion and does not eliminate the Complaint's plausible allegation that the initial seizure itself was constitutionally defective.

Defendants likewise argue that probable cause existed as a matter of law. That argument depends upon accepting Defendants' version of disputed facts and rejecting Plaintiff's allegations. Rule 12(b)(6) does not permit the Court to weigh competing factual narratives. Plaintiff alleges that she was not violating the presiding judge's cellphone directive, that neither assistance with the purse nor her brief verbal remark interrupted the proceedings, that Defendant VanWulfen's own actions caused any interruption, and that Plaintiff was seized pursuant to an unconstitutional County policy rather than pursuant to any judicial directive. These allegations plausibly state a Fourth Amendment claim.

Accordingly, Plaintiff has plausibly alleged that Defendant VanWulfen, acting under color of state law and pursuant to Livingston County's Comprehensive Security Policy, seized Plaintiff without lawful constitutional authority. The Fourth Amended Complaint therefore states a claim upon which relief may be granted.

## VI. PLAINTIFF HAS PLAUSIBLY PLED MONELL LIABILITY

Defendants argue that Plaintiff fails to state a claim for municipal liability because the Fourth Amended Complaint does not adequately plead an unconstitutional policy or a constitutionally deficient training program. Defendants mischaracterize Plaintiff's Monell claim. Plaintiff's principal theory is not merely that Livingston County failed to train its deputies. Rather, Plaintiff alleges that Livingston County adopted, maintained, and enforced an official written policy that itself authorized the unconstitutional conduct giving rise to Plaintiff's injuries.

To state a claim under *Monell v. Department of Social Services*, a plaintiff must identify an official policy or custom, connect that policy or custom to the municipality, and plausibly allege that it was the moving force behind the constitutional injury. The Fourth Amended Complaint satisfies each of those requirements.

### A. Plaintiff Identifies the Official Policy

The Fourth Amended Complaint identifies the specific written policy at issue: Livingston County's Comprehensive Security Policy, Section VIII.c.i. Plaintiff quotes and describes the Policy, alleges its operative provisions, and explains how it was enforced against members of the public attending court proceedings.

Unlike cases involving generalized allegations of unconstitutional customs, Plaintiff does not rely upon speculation concerning unidentified municipal practices. Plaintiff identifies the precise written Policy allegedly authorizing security personnel to act at their own discretion and remove members of the public based upon undefined determinations of "disruptive behavior."

19

The Complaint further alleges that the Policy was not merely an internal administrative guideline, but was enforced as though it constituted an independent source of legal authority governing members of the public attending court proceedings.

### B. Plaintiff Connects the Policy to Livingston County

The Fourth Amended Complaint expressly alleges that Livingston County adopted, maintained, implemented, and enforced the Comprehensive Security Policy through its final policymakers responsible for courtroom security.

Plaintiff further alleges that Livingston County continued to maintain and enforce the Policy after Plaintiff's seizure and that the Policy remains in effect today.

The Complaint therefore alleges a direct connection between Livingston County and the challenged Policy itself.

### C. Plaintiff Plausibly Alleges the Policy Was the Moving Force Behind the Constitutional Violations

The Complaint alleges that Defendant VanWulfen acted pursuant to the authority purportedly granted by the Comprehensive Security Policy when ordering Plaintiff to leave the courtroom and when physically seizing Plaintiff after Plaintiff questioned his authority.

According to the Complaint, Defendant VanWulfen did not act pursuant to any judicial order directing Plaintiff's removal. Rather, Plaintiff alleges that Defendant VanWulfen independently exercised authority conferred by the County's Policy to determine that Plaintiff's conduct constituted "disruptive behavior."

The Complaint further alleges that the Policy authorized security personnel to

20

substitute their own subjective determinations for clearly defined legal standards governing seizure and removal.

Plaintiff therefore plausibly alleges that the Policy itself supplied the asserted authority for Defendant VanWulfen's actions and constituted the moving force behind Plaintiff's constitutional injuries.

Plaintiff further alleges that the same Comprehensive Security Policy was later relied upon by the prosecution during the criminal proceedings, including as the basis for proposed jury instructions defining the authority of court security personnel and a person could be removed from a courtroom by security personnel due to disruptive behavior.

Plaintiff alleges that this demonstrates the Policy was not merely an internal administrative guideline but was treated throughout the criminal proceedings as an operative source of legal authority governing Plaintiff's conduct. These allegations further support Plaintiff's contention that the County's Policy was the moving force behind the constitutional injuries alleged.

### D. Defendants Mischaracterize Plaintiff's Constitutional Challenge

Defendants argue that Plaintiff merely disagrees with the ordinary dictionary definition of the word "disruptive."

This is not Plaintiff's claim.

Plaintiff alleges that the constitutional defect arises because the Policy delegates to security personnel broad discretionary authority to determine what speech or conduct is "disruptive," without objective standards, meaningful limitations, statutory authority, or judicial authorization.

Thus, Plaintiff challenges not the existence of courtroom rules, but the County's delegation of discretionary enforcement authority through an administrative policy that allegedly authorizes seizure and removal based upon vague and subjective standards.

### E. Plaintiff's Monell Claim Does Not Depend Solely Upon a Failure-to-Train Theory

Defendants devote substantial portions of their Motion to arguing that Plaintiff inadequately pleads a failure-to-train claim.

Even assuming arguendo that Defendants' criticism of Plaintiff's alternative failure-to-train allegations had merit, it would not defeat Plaintiff's principal Monell theory.

The Fourth Amended Complaint alleges that Livingston County itself adopted and maintained the Comprehensive Security Policy and that the Policy affirmatively authorized the conduct giving rise to Plaintiff's injuries.

Municipal liability may arise from an unconstitutional official policy independent of any failure-to-train theory.

Accordingly, Defendants' arguments directed toward Plaintiff's alternative training allegations do not dispose of Plaintiff's principal claim that Livingston County's written Policy itself was unconstitutional and served as the moving force behind the constitutional violations alleged.

### F. Plaintiff's Alternative Failure-to-Train Allegations Further Support Municipal Liability

The Fourth Amended Complaint additionally alleges that Livingston

22

County failed to adequately train, supervise, and discipline personnel concerning the constitutional limits governing removal of courtroom spectators, the regulation of protected speech, and the exercise of seizure authority under the Fourth Amendment.

Plaintiff alleges that these deficiencies foreseeably resulted in deputies exercising broad discretionary authority under the Comprehensive Security Policy without adequate constitutional limitations.

At the pleading stage, these allegations further support Plaintiff's Monell claim as an alternative theory of municipal liability.

Accordingly, accepting the well-pleaded allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Fourth Amended Complaint plausibly alleges municipal liability under *Monell v. Department of Social Services.,* 436 U.S. 658.

Defendants' Motion to Dismiss Count III should therefore be denied.

## VII. DEFENDANTS MISCHARACTERIZE THE POLICY

Throughout their Motion to Dismiss, Defendants repeatedly treat Livingston County's Comprehensive Security Policy as though it constituted an independent source of legal authority governing members of the public attending court proceedings.

Plaintiff's Fourth Amended Complaint alleges precisely the opposite.

Plaintiff does not challenge the authority of a trial judge to maintain courtroom order or to regulate courtroom proceedings. Nor does Plaintiff dispute that courts possess inherent authority to preserve decorum and ensure the orderly administration of justice. Rather, Plaintiff challenges Livingston County's use of an administrative policy as a substitute for lawful authority governing members of the public.

23

The Comprehensive Security Policy is an internal administrative policy adopted for courthouse security. It is not a statute enacted by the Michigan Legislature, a court rule promulgated by the Michigan Supreme Court, or a judicial order entered in Plaintiff's case. Nevertheless, Plaintiff alleges that Defendants treated the Policy as though it independently authorized the seizure and removal of members of the public based upon undefined determinations of "disruptive behavior."

This distinction is critical.

Plaintiff further alleges that Livingston County itself treated the Comprehensive Security Policy as an administrative directive by publishing it among the Court's Local Administrative Orders rather than among its publicly identified Court Policies. Plaintiff contends that this further supports her allegation that the Policy functioned as an internal administrative directive rather than an independently enforceable rule governing courtroom spectators. The Comprehensive Security Policy was not presented to the public as a courtroom rule governing spectators, yet Defendants allegedly treated it as though it supplied independent legal authority to regulate, seize, and ultimately remove members of the public.

The Complaint alleges that Defendant VanWulfen did not remove Plaintiff pursuant to a judicial order directing her to leave the courtroom. Plaintiff further alleges that no judicial officer determined Plaintiff's conduct warranted removal. Instead, Plaintiff alleges that Defendant VanWulfen exercised his own discretion under the Comprehensive Security Policy to determine that Plaintiff's conduct was "disruptive" and to order Plaintiff to leave the courtroom.

24

Plaintiff further alleges that Defendant VanWulfen exercised this authority despite the fact that the presiding judge had personally instructed spectators regarding cellphone procedures before trial commenced and that Defendant VanWulfen was present in the courtroom when the judge made the announcement. Plaintiff was not using a cellular telephone and was not the spectator previously instructed to leave because of cellphone use. According to the Complaint, Plaintiff was ordered to leave only after making a brief verbal remark directed toward Defendant VanWulfen.

Defendants' Motion repeatedly assumes that Defendant VanWulfen possessed independent authority under the Policy to issue a lawful command compelling Plaintiff's departure from the courtroom. Plaintiff's Complaint challenges that premise.

Authority to control courtroom proceedings rests with the presiding judicial officer. Plaintiff alleges that Defendant VanWulfen's directive was not based upon any judicial order but instead upon his own discretionary determination under the Comprehensive Security Policy. Thus, Plaintiff challenges the asserted source of authority for the command itself.

This distinction also explains why Defendants' repeated reliance upon the word "disruptive" misses Plaintiff's constitutional challenge. Plaintiff does not contend that courts may never remove genuinely disruptive individuals. Rather, Plaintiff alleges that Livingston County's Policy delegates to "security personnel" the authority to determine, without objective standards and without judicial authorization, what constitutes "disruptive behavior" sufficient to justify seizure and removal.

25

The Complaint therefore alleges a structural  constitutional defect. Plaintiff alleges that the legal predicate for Defendant VanWulfen's actions rested upon an administrative policy that purported to confer discretionary authority over members of the public, rather than upon any judicial directive or clearly defined legal standard. <u>According to the Complaint, every subsequent event—including Plaintiff's seizure, removal, detention, and prosecution—flowed from that same defective premise</u>.

The Comprehensive Security Policy was not presented to the public as a Michigan Supreme Court authorized courtroom rule governing spectators, yet Defendants allegedly treated it as though it supplied independent legal authority to regulate, seize, and ultimately remove members of the public.

Plaintiff further alleges that the significance of the Policy did not end with the courtroom seizure. According to the Complaint, the prosecution later relied upon the same Policy during the criminal proceedings, including through proposed jury instructions concerning the authority of court security personnel and removal of spectators based on "disruptive behavior." Plaintiff alleges that this demonstrates the Policy was treated throughout the criminal case as though it possessed the force and effect of law, even though it remained an internal administrative policy.

The progression alleged in the Fourth Amended Complaint illustrates why Plaintiff characterizes this defect as structural rather than isolated. Plaintiff alleges that the Comprehensive Security Policy first supplied the asserted authority for Defendant VanWulfen's command to leave the courtroom; the same asserted authority then formed the basis for Plaintiff's seizure and arrest; the resulting criminal prosecution proceeded

upon that same premise; and, according to the Complaint, the prosecution later incorporated Policy-derived concepts into proposed jury instructions. Plaintiff alleges that each stage of the proceedings relied upon the same administrative Policy as though it constituted an independent source of legal authority.

Defendants' Motion therefore begins from a premise that Plaintiff expressly disputes. Plaintiff does not allege that Defendants incorrectly interpreted an otherwise valid statute or court rule. Plaintiff alleges that Defendants relied upon an administrative policy that could not itself supply the legal authority necessary to justify the seizure of a member of the public engaged in protected activity. Accepting those allegations as true, as required on a Rule 12(b)(6) motion, Plaintiff has plausibly alleged that the asserted authority for the seizure was constitutionally defective.

Accordingly, Defendants' Motion to Dismiss should be denied.

## VIII. PLAINTIFF HAS STANDING TO SEEK DECLARATORY AND INJUNCTIVE RELIEF

Defendants argue that Plaintiff's request for declaratory and injunctive relief fails because Livingston County's courtroom security policies are constitutional and because Plaintiff was merely "required to be quiet while court was in session" before being "escorted out of the courtroom." That argument mischaracterizes the Fourth Amended Complaint and conflates three distinct questions: whether Plaintiff has standing, whether *Heck v. Humphrey* bars wholly prospective relief, and whether the challenged Policy ultimately withstands constitutional scrutiny.

### A. Plaintiff Plausibly Alleges a Real and Continuing Threat of Future Injury

27

The Fourth Amended Complaint alleges that Livingston County's Comprehensive Security Policy remains in effect and continues to authorize security personnel to remove individuals whom they deem to have engaged in undefined "disruptive behavior." It further alleges that Plaintiff intends to return to Livingston County court facilities to observe judicial proceedings and engage in constitutionally protected activity.

Plaintiff's alleged future injury is not based on speculation that Defendants might someday adopt a similar policy. She alleges that the same written Policy previously enforced against her remains operative and will govern her conduct whenever she attends future proceedings in Livingston County courts. The Sixth Circuit's prior standing analysis identified the absence of allegations concerning an intention to return; the Fourth Amended Complaint directly addresses that deficiency by alleging Plaintiff's intent to return, the conduct she intends to undertake, the Policy's application to that conduct, and the resulting chilling effect.

Plaintiff also alleges prior enforcement against her. She does not allege that she was merely asked to remain quiet or voluntarily escorted from the courtroom. She alleges that Defendant VanWulfen independently ordered her to leave after a brief verbal remark, physically seized her inside the courtroom, forcibly removed her, handcuffed her, and detained her. Those allegations must be accepted as true at the pleading stage.

Because Plaintiff alleges prior enforcement, an intent to return, continued exposure  to the same allegedly vague standard, and a present chilling effect on protected

28

activity, she has plausibly alleged a credible threat of future enforcement and an ongoing injury sufficient to support prospective relief.

### B. Olivier Confirms That Heck Does Not Bar Plaintiff's Wholly Prospective Claim

In *Olivier v. City of Brandon*, the Supreme Court held that *Heck* does not bar a § 1983 action seeking prospective relief against future enforcement of an allegedly unconstitutional local law, even though the plaintiff had previously been convicted under that law. The decisive distinction was that Olivier sought neither reversal of nor compensation for the prior conviction; his requested remedy was entirely future-oriented.

Count IV rests on the same distinction. Plaintiff does not seek through Count IV to reverse, expunge, annul, or obtain compensation for her prior conviction. Nor does she seek relief from that judgment's collateral consequences. She seeks a declaration concerning the present constitutionality of the challenged Policy and an injunction against its unconstitutional enforcement in the future.

Defendants' assertion that a favorable ruling could cast doubt on past events does not establish a *Heck* bar. *Olivier* expressly rejected the proposition that a purely prospective § 1983 action is barred merely because success may indicate that something in the past should not have occurred. What matters is that both the allegations supporting the requested remedy and the remedy itself are forward-looking.

Plaintiff's prospective claim therefore falls outside *Heck*'s concern with collateral attacks seeking release from custody, reversal of a conviction, or damages attributable to an invalid conviction.

29

### C. Defendants' Assertion That the Policy Is Constitutional Presents the Merits Question

Defendants argue that Count IV fails because the Policy is constitutional. But that statement assumes the conclusion Defendants ask the Court to reach.

Plaintiff does not dispute that courts may preserve security, decorum, and orderly proceedings. She alleges instead that this particular Policy permits security personnel to determine, without objective standards or a judicial directive, when speech or conduct becomes "disruptive" and warrants removal. She further alleges that the Policy was enforced against speech and conduct that did not interrupt the trial.

Defendants rely on their own factual characterization that Plaintiff was merely escorted from the courtroom and arrested only after assaulting an officer. The Complaint alleges that the seizure began when VanWulfen physically restrained Plaintiff inside the courtroom and that any later disputed events followed that initial seizure. The Court may not resolve that factual disagreement against Plaintiff on a Rule 12(b)(6) motion.

Whether the Policy is facially constitutional, whether it was constitutionally applied to Plaintiff, and whether Plaintiff ultimately qualifies for permanent relief are merits questions. At this stage, Plaintiff need only plausibly allege a continuing policy, a credible threat of future enforcement, and a constitutional defect capable of causing future injury. The Fourth Amended Complaint does so.

### D. The Requested Relief Would Not Disturb the State-Court Judgment

Plaintiff requests relief governing Defendants' future conduct. A declaration concerning the Policy's present constitutionality and an injunction against future

30

unconstitutional enforcement would neither vacate Plaintiff's conviction nor direct any Michigan court to reconsider it.

The requested relief is therefore wholly prospective within the rule recognized in *Olivier* and addresses an ongoing controversy independent of Plaintiff's completed criminal proceedings.

Accordingly, Plaintiff has plausibly alleged Article III standing, and her claim for wholly prospective declaratory and injunctive relief is cognizable under 42 U.S.C. § 1983 and is not barred by *Heck v. Humphrey*. Defendants' Motion to Dismiss Count IV should be denied.

## IX. DEFENDANTS IMPROPERLY ASK THE COURT TO RESOLVE FACTUAL DISPUTES

Throughout their Motion to Dismiss, Defendants repeatedly ask the Court to resolve disputed factual issues in their favor. That is not the function of a motion brought under Federal Rule of Civil Procedure 12(b)(6).

At this stage of the proceedings, the Court must accept Plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. The Court does not weigh evidence, resolve competing factual narratives, or determine which party's version of events is ultimately correct.

Rather than accepting the allegations contained in the Fourth Amended Complaint, Defendants repeatedly substitute their own characterization of disputed events. For example, Defendants assert that Plaintiff was merely "escorted out of the courtroom," whereas Plaintiff alleges that Defendant VanWulfen physically seized her inside the

courtroom, forcibly removed her without a judicial directive, handcuffed her, detained her for approximately two hours, and transferred custody to other deputies. Whether the encounter constituted a voluntary escort or a physical seizure presents a disputed factual issue that cannot be resolved on a motion to dismiss.

Similarly, Defendants repeatedly assert that Plaintiff disrupted court proceedings. The Fourth Amended Complaint alleges otherwise. Plaintiff alleges that she was not using a cellular telephone, that she merely assisted another spectator in retrieving personal belongings after that spectator had already been directed to leave the courtroom, and that Plaintiff's brief verbal remark did not interrupt testimony or otherwise interfere with the orderly administration of the proceedings. Plaintiff further alleges that any interruption resulted from Defendant VanWulfen's own actions in confronting and physically removing Plaintiff from the courtroom. Those competing factual allegations must be resolved through discovery and, if necessary, trial—not on the pleadings.

Defendants likewise characterize Defendant VanWulfen's directive as a lawful command issued pursuant to his authority to maintain courtroom order. Plaintiff alleges that no judicial officer directed Plaintiff to leave the courtroom and that Defendant VanWulfen instead relied upon Livingston County's Comprehensive Security Policy to exercise his own discretionary authority. Whether Defendant VanWulfen possessed lawful authority to issue the command challenged in this action presents a legal and factual issue that cannot be resolved by accepting Defendants' characterization of the events.

32

The Motion further assumes that Livingston County's Comprehensive Security Policy is constitutional and asks the Court to treat that conclusion as established. Plaintiff alleges precisely the opposite. The Fourth Amended Complaint alleges that the Policy is void for vagueness, overbroad, delegates unfettered discretion to court security personnel, and was enforced against Plaintiff in violation of her clearly established, constitutionally protected, First, Fourth, and Fourteenth Amendments rights.

Whether the Policy ultimately withstands constitutional scrutiny is a merits determination that cannot be resolved merely by accepting Defendants' assertions.

Defendants also repeatedly assert that Plaintiff was arrested only after assaulting Defendant VanWulfen. Plaintiff alleges that the constitutional injury began when Defendant VanWulfen physically seized Plaintiff inside the courtroom pursuant to the Comprehensive Security Policy and without any judicial directive ordering Plaintiff's removal. The Complaint therefore challenges the legality of the initial seizure itself.

Whether subsequent events occurred as Defendants describe them does not permit the Court to disregard Plaintiff's allegations concerning how the seizure began.

Finally, Defendants repeatedly invite the Court to adopt factual determinations made during the underlying criminal proceedings. Plaintiff does not ask this Court to review or overturn those proceedings. Nor may this Court, on a Rule 12(b)(6) motion, resolve factual disputes by choosing Defendants' interpretation of those proceedings over the allegations contained in the Complaint. The only question presently before the Court is whether Plaintiff has plausibly alleged claims upon which relief may be granted.

33

Accepting Plaintiff's well-pleaded allegations as true, the Fourth Amended Complaint plausibly alleges that Livingston County adopted and maintained an unconstitutional policy, that Defendant VanWulfen enforced that Policy against Plaintiff without a judicial directive, that Plaintiff was physically seized in violation of the Fourth Amendment, that Plaintiff's protected right to attend court proceedings and her speech was suppressed in violation of the First Amendment, and that Plaintiff continues to suffer an ongoing constitutional injury warranting declaratory and injunctive relief.

This case is not before the Court on summary judgment after discovery, nor following a trial on the merits. It comes before the Court at the pleading stage. Plaintiff has identified the written County policy at issue, alleged the manner in which that policy was enforced against her, identified the constitutional provisions allegedly violated, and alleged facts supporting municipal liability and prospective relief. Whether Plaintiff can ultimately prove those allegations is a question for a later stage of these proceedings. At present, Plaintiff need only allege a plausible claim for relief. The Fourth Amended Complaint satisfies that standard.

Accordingly, because Defendants' Motion repeatedly depends upon resolving disputed factual issues in Defendants' favor rather than applying the pleading standards governing Rule 12(b)(6), the Motion to Dismiss should be denied.

## CONCLUSION

For the reasons set forth above, Defendants have not demonstrated that dismissal under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) is warranted.

34

Defendants' jurisdictional arguments improperly characterize this action as an appeal from Plaintiff's state criminal proceedings. The Fourth Amended Complaint alleges independent constitutional violations arising from Defendants' conduct and Livingston County's continuing enforcement of the Comprehensive Security Policy.

Plaintiff does not seek reversal of her criminal conviction or appellate review of any state-court judgment.

Defendants likewise fail to establish that Plaintiff's claims are barred by *Heck v. Humphrey*. The Complaint challenges the constitutionality of Defendants' conduct, Livingston County's written Policy, and Plaintiff's continuing injury arising from the ongoing enforcement of that Policy. Plaintiff seeks damages for alleged constitutional violations together with declaratory and prospective injunctive relief directed at a municipal policy that remains in effect.

Because Plaintiff seeks prospective relief directed at Livingston County's continuing enforcement of an allegedly unconstitutional policy, rather than reversal of a prior criminal judgment, her claim falls within the type of prospective § 1983 action recognized in *Olivier* and should proceed.

The Fourth Amended Complaint plausibly alleges violations of Plaintiff's clearly established rights under the First, Fourth, and Fourteenth Amendments. Plaintiff has identified the specific County policy at issue, alleged facts connecting that policy to Livingston County, and plausibly alleged that the Policy served as the moving force behind the constitutional violations alleged. Plaintiff has further alleged a continuing

35

injury sufficient to support her request for declaratory and prospective injunctive relief.

Rather than accepting Plaintiff's well-pleaded factual allegations as true, Defendants repeatedly ask the Court to resolve disputed factual questions concerning Plaintiff's conduct, Defendant VanWulfen's authority, the nature of Plaintiff's removal from the courtroom, the constitutionality of the Comprehensive Security Policy, and the existence of probable cause. Those are matters for discovery and, if necessary, summary judgment or trial—not for resolution on a motion to dismiss.

This action is before the Court at the pleading stage. Plaintiff has identified the challenged governmental policy, alleged the manner in which that policy was enforced against her, identified the constitutional provisions allegedly violated, and pleaded facts sufficient to state plausible claims for relief under 42 U.S.C. § 1983. Accepting those allegations as true, as the Court must at this stage of the proceedings, the Fourth Amended Complaint satisfies the pleading requirements of the Federal Rules of Civil Procedure.

Accordingly, Plaintiff respectfully requests that this Court:

A. Deny Defendants' Motion to Dismiss in its entirety;

B. Permit Plaintiff's claims to proceed to discovery; and

C. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 24th day of July, 2026.

By: */s/Yvonne Louise Black*
Yvonne Louise Black
Plaintiff *In Propria Persona*

36